# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br>**Joseph Edward Bianchi and**<br>**Leslie Susan Bianchi,** | **Bankruptcy Case**<br>**No. 12-02210-JDP** |
| **Debtors.** | |

## MEMORANDUM OF DECISION

**Appearances:**

Kathleen A. McCallister, Meridian, Idaho, chapter 13 Trustee.

Randal J. French, Boise, Idaho, Attorney for Debtors.

### *Introduction*

This decision addresses a dispute between two competent, seasoned

bankruptcy lawyers that likely need not have come before the Court.

Chapter 13[1] trustee, Kathleen A. McCallister ("Trustee"), filed a

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

motion seeking the imposition of sanctions against the attorney for debtors

Joseph Edward Bianchi and Leslie Susan Bianchi ("Debtors"), Randal

French ("Counsel").  Dkt. No. 121.  Trustee alleges that Counsel made false

statements to her and has acted unprofessionally in connection with this

case.  *Id*.   Counsel denies these allegations.

After a hearing, the Court has considered the parties' briefs and

arguments, as well as the applicable law.  This Memorandum constitutes

the Court's findings and conclusions and disposes of the motion.  Fed. R.

Bankr. P. 7052; 9014.

### *Facts*

As the Court later explains, the facts giving rise to this contest will

have little impact on the Court's decision.  While tedious, they are recited

here nonetheless for necessary context.

On September 11, 2012, Debtors filed a chapter 13 petition.  Dkt. No.

1.  On March 28, 2013, after several hearings, the Court confirmed Debtors'

proposed plan which, if completed, would not pay their creditors in full.

Dkt. No. 46.

MEMORANDUM OF DECISION – 2

In late July, 2015, Leslie Bianchi's step-mother, Elsie May Kenst,

passed away.  In her will, she left Leslie[2] $100,000 in Canadian dollars

("CAD").  The will also provided that an additional $300,000 CAD of

estate funds be used to acquire an annuity for Leslie's benefit.[3]

Initially, $20,000 of the $100,000 cash inheritance was sent to Leslie

by the estate's administrator in a check issued by a Canadian bank.  When

she received it,[4] Leslie negotiated the check, converting it to United States

dollars ("USD"), netting $14,780 USD.  She sent a check for $13,800[5] to

Trustee, who received it on September 20, 2016.  That same day, Trustee's

office sent an email to Counsel inquiring as to why Debtors had sent her

an "extra" $13,800 payment.  Dkt. No. 121, Ex. A.  Trustee received the

following email response from Counsel:  "Because they like to send you

---

[2] Intending no disrespect, the Court will occasionally use first names for clarity.

[3] The annuity contract acquired for Leslie was issued on April 16, 2016.

[4] The record is not clear on the date Leslie received the check.

[5] Leslie apparently used the remaining $980 to pay for some dental treatments.  *Id*. at Ex. E.  She later sent $978 to Trustee as "the balance."  *Id*.

MEMORANDUM OF DECISION – 3

money.  OK, it is not a tip.  They received a gift from a relative,

unexpectedly, and paid the after tax[6] amount to the Ch 13 Plan." *Id.*

Taken aback, and more than a little curious about the information in

Counsel's response to her inquiry, on November 22, 2016, Trustee emailed

Counsel to ask for dates he and Debtors would be available for a Rule 2004

examination so Trustee could explore the background facts and source of

the funds used to pay her.  Counsel responded, arguably a bit curtly, that:

> The statement below [*i.e,* in Counsel's prior email] gave you
> all the information there is about this money.  They received a
> gift.

> If I recall correctly, this is a full payout ch 13 plan isn't it?  The
> payment that they made just shortens the number of months
> left to complete the plan, correct?

> Let me know if I am missing something there.

*Id*. at Ex. B.

A few minutes later, employing a decidedly defensive tone, Counsel

---

[6]  Debtors' counsel corrected the statement about the after-tax amount in
an email dated November 29, 2016, in which he indicated that, rather than the
after-tax amount, Debtors paid over the amount they received after the check
was converted from Canadian dollars to United States dollars.  *Id*. at Ex. D.

MEMORANDUM OF DECISION – 4

sent a second response to Trustee:

> I understand.  You file your motion and we will see what a
> judge wants to say about you having a 2004 exam on a ch 13
> plan that is a full payout where your complaint is that they
> did, without prompting, pay into the plan a gift that they
> received unexpectedly.  They told you they received a gift.
> There is no paperwork on the gift.

*Id*. at Ex. C.

That same day, November 22, 2016, Trustee filed a motion to modify

Debtors' confirmed plan to authorize her to include and distribute the

$13,800 payment to creditors, describing it as a "gift from a family

member."  Dkt. No. 76.  Trustee's motion noted that it was unclear

whether the funds paid to her by Debtors were derived from an

inheritance, trust, or settlement, and proposed that, if Debtors received

other funds as a result of an inheritance, the plan should require that they

also be paid into the plan.  *Id*.  Without objection from Debtors, and after a

hearing, the Court granted the motion to modify the plan in an order

entered January 30, 2017.  Dkt. No. 82.

Without contacting Counsel further, on December 6, 2016, Trustee

MEMORANDUM OF DECISION – 5

filed a motion to conduct a Rule 2004 examination of the Debtors to investigate the source of the $13,800.  Dkt. No. 80.  No hearing was requested by Trustee or scheduled on this motion.

On December 12, 2016, Counsel emailed Trustee, informing her that Leslie would be receiving an additional $80,000 CAD, and that those funds, as well as the $20,000 received previously, were part of an inheritance.  *Id*. at Ex. E.  Counsel's message explained that Debtors were going to consult their tax advisor about the tax consequences of the inheritance payments; it concludes with the following statement: "[Debtors] understand that they do have to pay any after-tax amount to the chapter 13 plan." *Id*.

Having heard nothing further from Counsel, on March 2, 2017, Trustee filed a motion for turnover of any funds from the inheritance, which motion also sought to obtain a copy of any annuity documents and a record of all payments made to Leslie via the annuity.  Dkt. No. 92. Trustee scheduled the turnover motion, and the motion for the Rule 2004 exam, for a hearing.

MEMORANDUM OF DECISION – 6

Counsel and Trustee's attorney appeared at the May 9, 2017,

hearing. They advised the Court that Counsel had provided Trustee with

the information she sought, as well as a copy of the annuity contract and

the contact information for the probate estate's representative. Dkt. No.

98. Counsel and Trustee's lawyer acknowledged at the hearing that

Counsel had agreed to keep Trustee apprised of any funds Leslie received

via the inheritance, and that Trustee could seek additional information

from the probate estate representative and annuity company regarding

future payments to Leslie. Based upon that understanding, Trustee's

attorney withdrew both the Rule 2004 and turnover motions without entry

of any orders. Dkt. No. 98.

On June 9, 2017, Counsel informed Trustee that the representative of

Elsie's probate estate needed written instructions from Trustee in order to

release the $80,000 CAD cash payment to Leslie. *Id*. at Ex. F. In another

email that same day, Counsel provided contact information to Trustee

stating, "I sent [the representative] an email with the Order directing

MEMORANDUM OF DECISION – 7

payment to trustee[7] and said that if he wanted to pay the proceeds in US

Dollars to your payment address, in certified funds, he could do so." *Id*.

After contacting the estate representative, on July 31, 2017, Trustee

received a check for $80,000 CAD, drawn on a Canadian bank, payable to

Trustee.  Via email, Trustee's staff informed Counsel about receipt of the

funds, indicating that Trustee would send the check to her bank to convert

to United States dollars.  *Id*. at Ex. G.  To her befuddlement, in an August 1

email, Counsel objected to Trustee's proposal to cash the check noting that,

in his opinion, Trustee "does not have the power or authority to take the

funds from [Leslie]."  *Id.*  Counsel demanded that Trustee "[s]end the

check to my client," emphasizing that Leslie "will do exactly what the

bankruptcy code requires."  *Id.*

Reacting to these communications, and without further contact with

Counsel, on August 5, Trustee filed a motion to dismiss Debtors'

---

[7] It is unclear what "order" Counsel is referring to in this email.  No order
was admitted in evidence.  The Court can not recall, nor does the case docket
reflect, the entry of any order by that time concerning Trustee's receipt of funds
from Canada.  Such an order was entered, but later in time, as discussed below.

MEMORANDUM OF DECISION – 8

bankruptcy case, or alternatively, for authority to negotiate the check. Dkt.

No. 99. After reviewing past events in the case, Trustee argued in the

dismissal motion that, presumably referring to her communications with

Counsel, Debtors had made repeated "material misrepresentations" to her

and her staff; that Debtors had "attempted to thwart Trustee in doing her

job"; that Debtors had "failed to cooperate with Trustee in accordance with

[§ 521(a)(3)]"; and that, based upon Debtors' "bad faith conduct and

failure to comply with the bankruptcy code," their case should be

dismissed. *Id.* at 4.

Debtors, of course, objected to dismissal of their case at such a late

date when their creditors' claims would be paid in full. They denied that

they had acted inappropriately and alleged, without explaining the basis

for doing so, that Trustee had "without any apparent authority,

intercepted the second part of the inheritance." Dkt. No. 103 at 3.

After considering arguments from Counsel and Trustee about one

another's improper demands and conduct at an August 16, 2017, hearing,

the Court denied Trustee's motion to dismiss, but authorized her to

MEMORANDUM OF DECISION – 9

negotiate the check.  Dkt. No. 104.  An order memorializing the Court's

ruling was entered on September 1, 2017.  Dkt. No. 108.

Trustee thereafter arranged with her bank to negotiate the check and

convert the payment to United States dollars.  Dkt. No. 121 at Ex. H.

Despite an acknowledgment in the Court's order authorizing Trustee to

negotiate the check that she would likely need to hold the funds for sixty

days before disbursing them, Dkt. No. 108, approximately three weeks

after the order was entered, on September 22, 2017, Counsel emailed

Trustee and inquired about the status of the funds.  *Id.* at Ex. I.  Receiving

no response, on September 30, 2017, Counsel sent an email to the Assistant

United States Trustee strongly complaining about Trustee's delay in

having the funds credited to Debtors' chapter 13 account.  *Id.*  In his email,

Counsel speculated about the possible reasons for the delay, worrying that

the check may have been stolen, or the funds misappropriated.

The check was ultimately cashed and the proceeds in USD deposited

in Trustee's account for Debtors' chapter 13 case.  On December 21, 2017,

Trustee issued a notice that, because of the extraordinary payments,

MEMORANDUM OF DECISION – 10

Debtors had completed their plan.  Dkt. No. 118.  The following day, an

order was entered granting Debtors a discharge.  Dkt. No. 119.

Trustee filed the subject motion for sanctions against Counsel on

January 9, 2018.  Dkt. No. 121.  Counsel opposed the motion, Dkt. No. 123;

Trustee filed a reply, Dkt. No. 124; and after the February 13, 2018,

hearing, the matter was taken under advisement.  Dkt. No. 126.[8]

## *Analysis and Disposition*

As noted above, the facts set forth above are largely inconsequential.

This is because Trustee has offered no valid legal basis for the relief she

seeks in her motion, nor has she observed the correct procedure in

requesting sanctions.

In the motion, Trustee cited no statute, rule, or other authority to

support her request for an award of sanctions against Debtors' counsel.  At

the hearing, the Court questioned her about this.  She stated that her

motion seeks payment for her reasonable attorneys fees to "compensate

---

[8]  Without permission of the Court, Trustee filed an amended reply to
Counsel's objection to her motion on February 25, 2018, nearly two weeks after
the hearing.  Dkt. No. 127.

MEMORANDUM OF DECISION – 11

for the time she had to expend unnecessarily in conducting the

administration of this case as a result of false statements and accusations

made by Counsel . . . ." Dkt. 121. The sole legal basis for her motion was,

she declared at the hearing, Rule 9011. She offered that any monetary

sanctions imposed by the Court on Counsel need not be given to her, and

indeed, in her post-hearing amended reply, she acknowledged that any

payment to her would be precluded by the limits on her compensation in

28 U.S.C. § 586(e). She reiterated that her sanctions motion was intended

to be disciplinary in nature, and requested that any monetary sanctions be

paid to Idaho Legal Aid Services or a charitable organization. Dkt. No.

127.

Of course, before the Court considers the proper recipient for a

monetary award, it must first decide whether Rule 9011 authorizes the

Court to act under these circumstances. And it does not.

A.   Rule 9011

Rule 9011 provides, in pertinent part, that:

By presenting to the court (whether by signing, filing,

MEMORANDUM OF DECISION – 12

submitting, or later advocating) a petition, pleading, written
motion, or other paper, an attorney or unrepresented party is
certifying that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable
under the circumstances,

> (1) it is not being presented for any improper purpose,
> such as to harass or to cause unnecessary delay or
> needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions
> therein are warranted by existing law or by a
> nonfrivolous argument for the extension, modification,
> or reversal of existing law or the establishment of new
> law;
> (3) the allegations and other factual contentions have
> evidentiary support or, if specifically so identified, are
> likely to have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on
> the evidence or, if specifically so identified, are
> reasonably based on a lack of information or belief.

Rule 9011(b).  However, the Rule also establishes procedural requirements

as a condition to issuance of any sanctions.   In particular, Rule 9011(c)

requires that:

> A motion for sanctions under this rule shall be made
> separately from other motions or requests and shall describe
> the specific conduct alleged to violate subdivision (b).  It shall
> be served as provided in Rule 7004.  The motion for sanctions
> may not be filed with or presented to the court unless, within
> 21 days after service of the motion (or such other period as the

MEMORANDUM OF DECISION – 13

court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

Rule 9011(c)(1)(A).

In this case, Trustee has not complied with the procedure required by Rule 9011.  According to the docket and the certificate of service attached to the motion, Trustee filed the motion with the Court on January 9, 2018, and electronically served the motion on Counsel that same day. There is nothing in the record to show that, before doing so, Trustee complied with the "safe harbor" aspects of Rule 9011(c) requiring that, before the motion was filed, Counsel be afforded 21 days advance notice of Trustee's intentions in order to correct the allegedly sanctionable conduct. The failure to follow the procedural requirements of Rule 9011(c) is fatal to Trustee's motion.  *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (citing *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) ("the procedural requirements of Rule 11(c)(1)(A)'s 'safe harbor' are mandatory."); *Enrose Farms, Inc. v. S.S. Steiner, Inc. (In re Enrose Farms, Inc.)*, 99.1 I.B.C.R. 22, 24-

MEMORANDUM OF DECISION – 14

25 (Bankr. D. Idaho 1999) (sanctions should not be awarded when the "safe harbor" provisions are not complied with).  Accordingly, Trustee's motion for sanctions must be denied on procedural grounds.

However, even had Trustee complied with the procedural requirements of Rule 9011(c), on this record, the Court would lack the authority to sanction Counsel.  Without regard to the merits of Trustee's arguments, the difficulty is that she targets emails sent between Trustee and Counsel as the basis for the alleged Rule 9011 violation.  But a fair reading of the text of the Rule 9011 shows that it was not intended to police lawyer email communications.  Rule violations must be based upon "a petition, pleading, written motion, or other paper" that has been "present[ed] to the court (whether by signing, filing, submitting, or later advocating)."  Here, the email messages between Trustee and Counsel were not "presented to the Court" and indeed the Court would have been unaware of them save for their inclusion with Trustee's motion.

To be sure, there are many examples in the case law where an attorney has been sanctioned for making unsubstantiated accusations or

MEMORANDUM OF DECISION – 15

regrettable comments directed at opposing counsel.  *See, e.g., In re First City Bancorporation of Texas, Inc.*, 282 F.3d 864, 866 (5th Cir. 2002) (per curiam) (upholding imposition of fine upon attorney who, among other things, characterized another attorney as a "weak pussyfooting 'deadhead'" who had been 'dead' mentally for ten years" and as an "underling who graduated from a 29th-tier law school") (internal quotations omitted); *In re Cordova-Gonzalez*, 996 F.2d 1334, 1336 (1st Cir. 1993) (per curiam) (upholding suspension of an attorney from practice in part because attorney made "vitriolic and, as far as the record shows, unfounded personal assaults" upon the judge and opposing counsel in the pleadings); *In re Plaza Hotel Corp.*, 111 B.R. 882 (Bankr. E.D. Cal. 1990) (disqualifying attorney from representing debtor in part because attorney made sexist comments to attorney representing the United States Trustee); *Attorney Grievance Comm'n v. Alison*, 565 A.2d 660, 664 (Ct. App. Md. 1989) (suspending attorney whose misconduct included referring to opposing counsel's argument as "particularly absurd" and who referred to the attorney as a "son of a bitch") (internal quotations omitted).  However, to

MEMORANDUM OF DECISION – 16

be sanctionable, an attorney's offensive comments must have been made

in the proper context.  Sanctions are not available, even where offensive

oral statements are made by an attorney in the presence of the Court:

> While Rule 11[9] permits the district court to sanction an
> attorney for conduct regarding "pleading[s], written
> motion[s], and other paper[s]" that have been signed and filed
> in a given case, it does not authorize sanctions for, among
> other things, . . . misstatements made to the court during an
> oral presentation.

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1130 (9th Cir. 2002) (internal citation

omitted); *see also Bus. Guides, Inc. v. Chromatic Communications Enter.*, 892

F.2d 802, 813 (9th Cir. 1989) (holding that misstatements made during oral

argument do not constitute sanctionable offenses under Civil Rule 11); and

Civil Rule 11, advisory committee notes, 1993 Amendments, Subdivisions

(b) and (c) (explaining that "[t]he rule applies only to assertions contained

in papers filed with or submitted to the court. [The Rule] does not cover

---

[9]  Rule 9011 and Civil Rule 11 are nearly identical in text, and thus, the Court may rely on Rule 11 cases in this setting.  *In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir. 1991) (citing *In re Chisum*, 847 F.2d 597, 599 (9th Cir.), *cert. denied*, 488 U.S. 892 (1988) (citing *In re Lewis*, 79 B.R. 893, 895 (9th Cir. BAP 1987))).

MEMORANDUM OF DECISION – 17

matters arising for the first time during oral presentations to the court,
when counsel may make statements that would not be made if there had
been more time for study and reflection.").[10]

If oral statements made to the Court are not sanctionable under Rule
9011, then certainly sharp barbs exchanged privately via email between
lawyers fall outside the reach of the Rule.  Simply put, Rule 9011 can not
be the legal basis for any sanctions under these circumstances.  Trustee's
motion will be denied.

B.    The Bigger Picture

Taking a step back, while the Court declines to formally intervene in
this dispute does not mean that it condones the conduct and resulting
conflict on display here.  The Court expects members of its bar to, at all
times, act professionally and civilly in their dealings with one another.
Rarely, in this Court's experience, have attorneys not done so.  To

_____

[10]  No doubt, the Court has other, inherent authority to police the conduct
of attorneys outside of the courtroom.  But Rule 9011 is not the source of the
power to sanction in this context, and Trustee has not invoked that other
authority.  Moreover, on these facts, the Court would decline to exercise such
powers *sua sponte*.

MEMORANDUM OF DECISION – 18

emphasize the importance of civility, the Court has formally adopted a

local rule to incorporate appropriate standards of conduct for its judges,

litigants, and attorneys.  Trustee and Counsel should recall the Local

Rule's requirements:

> (b) Civility in professional conduct is the responsibility of every
> lawyer, judge, and litigant in the federal system.  While lawyers
> have an obligation to represent clients zealously, incivility to
> counsel, adverse parties, or other participants in the legal process,
> undermines the administration of justice and diminishes respect for
> both the legal process and our system of justice.

> (c) The bar, litigants and judiciary, in partnership with each other,
> have a responsibility to promote civility in the practice of law and
> the administration of justice.  The fundamental principles of civility
> that will be followed in the Bankruptcy Court for the District of
> Idaho, both in the written and spoken word, include the following:

>> (1) Treating each other in a civil, professional, respectful, and
>> courteous manner at all times;

>> (2) Not engaging in offensive conduct directed towards others
>> or the legal process;

>> (3) Not bringing the profession into disrepute by making
>> unfounded accusations of impropriety;

>> (4) Making good faith efforts to resolve by agreement any
>> disputes;

>> (5) Complying with the discovery rules in a timely and
>> courteous manner; and

MEMORANDUM OF DECISION – 19

> (6) Reporting acts of bias or incivility to the clerk of the court.
> The clerk of the court will then determine the appropriate
> judicial officer with whom to discuss the matter.

L.B.R. 9011.1.

While the Court can not know the history of the relationship
between the parties, the facts of this case suggest that the considerable
friction existing between Trustee and Counsel in this case was premised
upon misunderstandings resulting from inadequate communications with
one another.[11]  Trustee, in administering Debtors' confirmed plan, was
justified in inquiring about the circumstances surrounding their $13,800
"extra" payment to her.  Counsel's initial email to Trustee following her
inquiry was, at best, a poor attempt at humor, and at worst, snarky and

---

[11]  In this Court's experience, when it comes to promoting the civil and
courteous practices and conduct exemplified in the Local Rule, electronic
communications are frequently a poor substitute from more personal contacts
between lawyers, either by phone or in person.  Whether due to human nature or
for some other reason, the Court has observed that lawyers who seem anxious to
lob an ill-considered electronic bomb at their adversary, would never consider
such an approach in the presence of one another.  That emails may be more
efficient than personal meetings or telephone conversations should not render
the usual rules of courtesy and professionalism inapplicable.

MEMORANDUM OF DECISION – 20

unprofessional.  This exchange seems to have set the tone for the parties'

further communications.

On the other hand, Counsel's later emails to Trustee exposed his

incorrect belief that Debtors' existing plan payments paid creditors' claims

in full, such that he was confused and reluctant to offer up Debtors for a

seemingly unnecessary Rule 2004 examination.  However, by then, Trustee

was inclined to disbelieve Counsel and suspect his clients might be

involved in some sort of mischief.  Then, later, when Trustee took pains to

ensure that the Canadian funds received from Debtors were fully certified

before disbursing them under the plan, Counsel reacted badly, by

penning an unnecessary complaint to the Assistant United States Trustee,

even speculating therein that Trustee may have done something

inappropriate with the money.

Simply put, had Trustee and Counsel engaged in a thoughtful, civil,

personal conversation about the facts in this case, both would have

emerged informed and enlightened.  In contrast, the facts here are stark

evidence that an impaired relationship between two professionals can

MEMORANDUM OF DECISION – 21

hinder their efficacy, and just an important, impair the administration of a

bankruptcy case.  When that occurs, debtors, creditors, and the Court are

all subjected to needless delay and expense.

### *Conclusion*

Trustee's motion will be denied in a separate order.  Perhaps after

reflection, these two professionals will embrace the benefits of repairing

their relationship going forward.

Dated:  March 20, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 22